In the Matter of Robert E.
MOORE, Debtor.

**CHASE MANHATTAN BANK,
N.A., Plaintiff,**

v.

**Robert E. MOORE, Defendant.**

Bankruptcy No. 83–1079.
Adv. No. 83–780.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 15, 1984.

Bruce A. Nants, Orlando, Fla., for plaintiff

Michael Farver, St. Petersburg, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a misuse of credit card case and the matter under consideration is the dischargeability vel non of a debt in the amount of $4,770.42 admittedly owed by, Robert E. Moore (Debtor) to The Chase Manhattan Bank, N.A., (Chase Manhattan), the Plaintiff who instituted this adversary proceeding.

The claim of non-dischargeability is based on 11 U.S.C. § 523(a)(2)(A) and alleges that the Defendant obtained monies or properties from the Plaintiff through false pretenses, false representation and actual fraud. The evidence presented at the final evidentiary hearing is largely without dispute and can be summarized as follows:

Sometime in July, 1982, Chase Manhattan mailed a Visa Request Certificate to the Debtor informing him that they were holding a Chase Manhattan Visa Card with a credit line of $1,500 for his use. The Debtor, in response to the invitation to use the services of Chase Manhattan, returned the Request Certificate indicating that he would be glad to accept the card. In due course the card was mailed to the Debtor who promptly paid the $20.00 service charge. In October, 1982, the Debtor made several purchases using the Visa Card, but it was not until December, 1982, that he exceeded the credit limit previously indicated on the Visa Request Certificate. The first statement showing a balance which exceeded the credit limit was the December statement which Chase Manhattan mailed to the Debtor in January, 1983. The statement showed a balance of $2,121.56. While the Debtor made a $900 payment in February, 1983, which brought the balance within the credit limit, the Debtor continued to use the credit card and the balance ultimately reached a high of $4,695.30.

Although Chase Manhattan attempted to back charge merchants in the amount of $1,100.77, it appears that the merchants refused to accept these back charges and Chase Manhattan, therefore, redebited the Debtor's account. It further appears that some time in February, although the date is uncertain, Chase Manhattan attempted to contact the Debtor, put him on notice that he had charged in excess of his credit limit, and advise him not to use the card until he paid down the balance below the credit limit.

The record reveals that there were several telephonic communications and correspondence from Chase Manhattan to the Debtor, however, the exact dates, particularly of the telephonic communications are uncertain. It is clear, however, that Chase Manhattan never actually revoked the Debtor's privilege to use and possess the card.

The first communication which is in evidence is dated February 5, 1983 (PL's Exh. No. 2) and states "your $1,750.07 balance is considerably higher than your $1,500 credit line causing your account to be closed for further purchases. Contact your over line department and discuss the matter." On February 26, a similar communication was sent to the Debtor which included the following statement, "failure to make satisfactory arrangements to correct this situation *will result* in cancellation of your account". (Emphasis supplied) Even as late as May 4, 1983, the statement sent to the Debtor indicated that if the amount due is not paid, the card privileges *would be* cancelled. (Emphasis supplied) There is no evidence in this record that this Debtor made any purchases or any charges after March 11, 1983.

It should be noted that the record is totally devoid of any evidence of as to the financial status of the Debtor at the time these purchases were made; nor is there evidence in this record regarding the Debtor's earnings during the pertinent time period or his ability to meet these obligations.

This is factual background against which the Court must be called upon to apply the legal principles which govern dischargeability of debts connected with use of credit cards. The claim of dischargeability is based on § 523(a)(2)(A) which in pertinent part provides as follows:

§ 523 Exceptions to Discharge

(a) A discharge under § 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money property, services, or an extension, renewal, or refinance of credit by—

(A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

The claim of non-dischargeability based on misuse of credit has been considered over the years by the 5th Circuit and also by the 11th Circuit. The first case often cited and also criticized was *Davison-Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir.1940) *cert. den.* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941). In this case the Bankruptcy Court held that debts incurred prior to the Bankruptcy filing were dischargeable because they were not obtained by means of actual overt false pretenses and representations. This decision was affirmed by the District Court and ultimately by the Fifth Circuit. Davison-Paxon has been repeatedly criticized by commentators because it is understood to mean that a Debtor's fraudulent concealment of insolvency is rewarded by permitting the Debtor to obtain release of obligations created by misuse of credit. The Eleventh Circuit considering, in the case of *First National Bank of Mobile in Roddenberry,* 701 F.2d 927 (11th Cir.1983), indicated its view however, that *Davison-Paxon* did not really intend to reward a deceitful Debtor. On the contrary, "it sought to deny a particularly improvident creditor the special privilege of an exemption from the general discharge." *Roddenberry,* 701 F.2d at 930.

The Eleventh Circuit stated that "[n]otwithstanding its critics, *Davison-Paxon* retains its validity under limited circumstances, especially when the credit transactions

involve a one-on-one relationship between a Debtor and Creditor of a type which was common in 1940." *Roddenberry,* 701 F.2d at 932. The Court pointed out, however, that further analysis is necessary when third party creditors are involved. The Eleventh Circuit, in ruling in favor of the Debtor stated that once a credit card is used, the Bank agreed to trust the cardholder and to extend credit, and once the credit is extended, the Bank must decide when and if the credit will be revoked. See *Roddenberry, supra.* Having considered the matter, then, the Eleventh Circuit concluded that a voluntary assumption of a risk on the part of a Bank continues until it is clearly shown that the Bank unequivocally and unconditionally revoked the right of the cardholder to further possession and use of the card and until the cardholder is aware of the revocation. *Roddenberry, supra.* Accordingly, debts arising prior to the communication of revocation are part of the risk assumed by the Bank, authorizing the conditional possession of the cards.

Applying the foregoing legal principles as stated by the highest Court of this Circuit, it is clear that the Plaintiff failed to establish or furnish any proof that in this particular instance the right to possess and use the card was ever effectively communicated to this debtor. Therefore, it is clear that the claim of non-dischargeability cannot be sustained. Moreover, unlike in other credit card cases, there is no evidence in this record that at the time pertinent, the Debtor was not in a financial condition to meet these obligations. The fact of the matter is, that in February, 1982, he made a $900 payment toward the account and coupled with the fact that the last purchase was made on March 11, 1982, it is impossible and unwarranted to conclude that at the time he made the additional purchases, he had no intention or capability of meeting the obligations in spite of the fact that he exceeded his credit limit. This being the case, the Plaintiff failed to establish with the requisite degree of proof, the essential elements under *Roddenberry* of a claim of non-dischargeability and therefore, the

Complaint shall be dismissed with prejudice.

A separate final judgment will be entered in accordance with the foregoing.